UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAYNE S. POST,

Plaintiff,

-vs-

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

**DECISION and ORDER**
**No. 1:15-cv-00257(MAT)**

## I. Introduction

Represented by counsel, Jayne S. Post ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

## II. Procedural Status

Plaintiff, a former reading teacher, protectively filed for DIB on January 23, 2012, alleging disability as of September 1, 2010, due to atrial fibrillation, hypertension, hyperlipidemia, diabetes, thyroid disease, obesity, narrow sphincter and anal fissure. T.61, 106-09. After her claim was denied, Plaintiff requested a hearing which was held on June 6, 2013, before administrative law judge William Straub ("the ALJ"). T.28-54; 66-67. Plaintiff appeared with her attorney and testified. The ALJ

issued an unfavorable decision on August 22, 2013, T.10-24, and Plaintiff requested review by the Appeals Council. T.7-9. On January 27, 2015, the Appeals Council denied Plaintiff's request, making the ALJ's decision the final decision of the Commissioner. T.1-6. This timely action followed.

Plaintiff filed a motion for judgment on the pleading pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt #5). The Commissioner cross-moved for judgment on the pleadings and responded to Plaintiff's motion (Dkt #9). Plaintiff filed a notice that she did not intend to file a reply (Dkt #10). For the reasons discussed below, the Commissioner's decision is reversed, and the matters is remanded for further administrative proceedings.

**III. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record

and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**IV. The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity since September 1, 2010, when she retired as a reading teacher.

At step two, the ALJ determined that Plaintiff has the "severe" impairment of obesity. Although Plaintiff has numerous other medically determinable impairments, i.e., diabetes mellitus, hyperthyroidism, hypertension, vision problems, and atrial fibrillation, the ALJ found that the evidence of record established that these impairments "cause only a slight abnormality that would have no more than a minimal effect on her ability to work." In particular, the ALJ noted that Plaintiff's diabetes was being managed medically and should be amenable to proper control by adherence to recommended medical management and medication

compliance, and there was no evidence Plaintiff has suffered any "end organ damage." Moreover, the ALJ found, the evidence shows that Plaintiff has no significant problems with her kidneys, hands, or feet. Although Plaintiff testified at the hearing that her vision problems had worsened, she denied vision problems in April 2011, and she drives to Gowanda to visit her elderly mother. In addition, the ALJ cited Plaintiff's cardiologist's observation that her test results were unremarkable. The ALJ noted that endocrinologist Dr. Joseph Torre, who started treating Plaintiff for hyperthyroidism in 2008, found that Plaintiff had adequate control of her blood pressure and that her thyroid function was stable. The ALJ therefore found that her diabetes mellitus, hyperthyroidism, hypertension, vision problems, and atrial fibrillation are not "severe" for purposes of step two of the sequential evaluation.[1]

At step three, the ALJ determined that "[n]o reasonable argument can be made" that Plaintiff's "severe impairment" meets or equals the specified criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix I.[2] The ALJ proceeded to

---

1 Plaintiff does not challenge the ALJ's step two "severity" determination.

2 The ALJ noted that there are no Listing criteria in Appendix 1 "specific to the evaluation of obesity impairments[,]" but Social Security Ruling ("SSR") 02-1p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the claimant's residual functional capacity ("RFC").

assess Plaintiff as having the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). The ALJ, however, did not explicitly analyze Plaintiff's work-related abilities on a function-by-function basis.[3]

At step four, the ALJ found that Plaintiff has the RFC to perform her past work as a teacher because that work does not require the performance of activities precluded by her RFC. Accordingly, the ALJ found, Plaintiff is not disabled. Because the ALJ found Plaintiff not disabled at step four, he did not proceed to step five of the sequential evaluation.

## V. Discussion

### A. RFC Not Supported by Substantial Evidence

"RFC" is defined as "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p,

---

[3] SSR 96-8p provides that an assessment of the claimant's RFC "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function* basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) (emphasis added).

1996 WL 374184, at *2 (S.S.A. July 2, 1996). As noted above, the ALJ found Plaintiff capable of performing the full range of "light work." According to the Commissioner's regulation, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . ." 20 C.F.R. § 404.1567(b). Plaintiff argues that the ALJ's RFC assessment is inconsistent with the report of consultative physician Nikita Dave, M.D., to which the ALJ assigned "great weight."

Dr. Dave examined Plaintiff at the Commissioner's request on April 18, 2012, and noted that Plaintiff's height was 5'2" and her weight was 297 pounds. T.258. The results of Dr. Dave's clinical examination of Plaintiff were unremarkable. Dr. Dave diagnosed Plaintiff with obesity, hyperthyroidism, atrial fibrillation, dyslipidemia, anti-coagulation status, dyspnea on exertion, light-headedness, diabetes type 2, hypertension, status post-cholecystectomy, urgency and poor control of bowel movements

(likely multi-factorial). Dr. Dave's medical source statement was as follows:

> Due to *moderate to severe* obesity, the claimant *may not be able to tolerate continuous activity* or activities requiring sustained exertion and endurance. Due to anticoagulation status, she should not climb ladders or sharp, heavy, dangerous equipment and machinery due to risk of bleeding and cerebral hemorrhage with [a] fall.

T.260 (emphases supplied).

As an initial matter, Dr. Dave's opinion that Plaintiff's obesity is "moderate to severe" is contrary to the most recent Social Security Ruling on obesity, SSR 02-1p.[4] In this ruling, the Commissioner observes that the National Institutes of Health ("NIH") have established medical criteria for the diagnosis of obesity and have promulgated guidelines[5] classifying overweight and obesity in adults according to Body Mass Index ("BMI"). The NIH's guidelines recognize three levels of obesity based on an individual's BMI. "Level III, termed "extreme" obesity, includes BMIs greater than or equal to 40." SSR 02-01p, 67 Fed. Reg. at 57860. "These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss." Id. Based on Plaintiff's height (62 inches) and weight (297 pounds) at

---

4 SSR 02-1p, TITLES II AND XVI: EVALUATION OF OBESITY, 2002 WL 31026506, 67 Fed. Reg. 57859 (S.S.A. Sept. 12, 2002).

5 NHLBI OBESITY EDUCATION INITIATIVE EXPERT PANEL ON THE IDENTIFICATION, EVALUATION, AND TREATMENT OF OBESITY IN ADULTS (US), CLINICAL GUIDELINES ON THE IDENTIFICATION, EVALUATION, AND TREATMENT OF OVERWEIGHT AND OBESITY IN ADULTS: THE EVIDENCE REPORT (Nat'l Heart, Lung, and Blood Inst., Sept. 1998), available at http://www.ncbi.nlm.nih.gov/books/NBK2003/ (last accessed Jan. 8, 2016).

the time of Dr. Dave's examination, her BMI was greater than 54, the highest BMI listed for that height/weight combination in the NIH guidelines.[6] Plaintiff's BMI thus squarely placed her in the category of "extreme[ly]" obese. See SSR 02-01p, 67 Fed. Reg. at 57860. Dr. Dave's mischaracterization of Plaintiff's obesity, which the ALJ accepted, is especially problematic because "obesity" was the only severe impairment found by the AlJ at step two.

There also is an apparent conflict between the ALJ's RFC assessment and Dr. Dave's opinion. SSR 96–8p provides that an individual's RFC "is an assessment of an individual's ability to do *sustained* work-related physical and mental activities in a work setting on a regular and *continuing* basis." SSR 96–8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Dr. Dave opined that Plaintiff "*may not* be able to tolerate *continuous* activity or activities requiring *sustained* exertion and endurance." Thus, at a minimum, Dr. Dave's opinion suggests that Plaintiff would have difficulty being on her feet for 6 hours out of an 8-hour day, or lifting 20 pounds for up to one-third (2.7 hours) of an 8-hour workday, as is required to perform work at the "light" exertional level. See 20

---

6 See http://www.ncbi.nlm.nih.gov/books/NBK1997/ (last accessed Jan. 8, 2016).

C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983) (defining light work).[7]

The ALJ's RFC assessment also is deficient in that omits a function-by-function analysis relating to Plaintiff's ability to perform the necessary physical, mental, sensory, and other requirements of light work. See SSR 96–8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996); see also 20 C.F.R. § 404.1569a(b), (c) (restrictions caused by impairments that are relevant to the ability to perform job demands include limitations that are exertional, non-exertional and a combination of both). SSR 96–8p cautions that "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the [ALJ] overlooking some of an individual's limitations or restrictions," which "could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work" and "an erroneous finding that the individual is not disabled." 1996 WL 374184, at *4. Only when there is substantial evidence of each physical requirement listed in the regulations can a claimant's RFC be expressed in terms of the exertional levels of

7 SSR 83-10 states that "[t]he regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing. . . . A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position." 1983 WL 31251, at *5.

work (sedentary, light, medium, heavy, and very heavy). Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007); see also LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990). The ALJ did not provide any rationale for his implicit finding that Plaintiff could fulfill all of the exertional and non-exertional requirements of a full range of light work. The basis this determination is not discernible from the record, given that there is no medical opinion in the record—either from a treating source or the consultative physician—regarding Plaintiff's ability to perform the work-related activities relevant to making a determination of disability. Dr. Dave's opinion, the only medical source statement in the record, does not address the particular limitations caused by Plaintiff's obesity and other impairments on her ability to perform necessary work-related functions "such as sitting, standing, walking, lifting, carrying, pushing, pulling, . . . reaching, handling, stooping or crouching[.]" 20 C.F.R. § 404.1567(b). Remand accordingly is necessary to obtain a medical source statement that addresses Plaintiff's physical RFC in terms of her abilities to perform work-related activities and to re-evaluate Plaintiff's RFC.

**B. Erroneous Credibility Assessment**

In "determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing

the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). The Commissioner's regulations set forth a two-step process for evaluating a claimant's testimony regarding her pain and other limitations. Id. (citing 20 C.F.R. § 404.1529(b), (c)). Once an ALJ determines that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, 20 C.F.R. § 404.1529(b), the ALJ must consider the "extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [her] symptoms affect [her] ability to work." 20 C.F.R. § 404.1529(a). The ALJ must consider "[s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the Commissioner] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." 20 C.F.R. § 404.1512(b)(3); see also 20 C.F.R. § 404.1529(a); SSR 96-7p. If a claimant's testimony about her subjective complaints is rejected, the ALJ must state the basis for doing so "with sufficient particularity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief

and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted)). Notably, "because a claimant's symptoms, such as pain, 'sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone,' once a claimant has been found to have a pain-producing impairment, the Commissioner may not reject the claimant's statements about [her] pain solely because objective medical evidence does not substantiate those statements." Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp.2d 330, 349–50 (E.D.N.Y. 2010) (citing § 404.1529(c)(2)-(3)); accord Henningsen v. Comm'r of Soc. Sec. Admin., ___ F. Supp.3d ___, 2015 WL 3604912, at *14 (E.D.N.Y. June 8, 2015).

At the hearing, Plaintiff testified that she retired at the end of 2010 after a 21-year career as a reading teacher because of her medical problems. Plaintiff explained that her thyroid problems cause difficulty with stamina and that her thyroid medications cause side effects, including fatigue. She said that she does not sleep through the night and requires a one-hour nap during the day. When she is under stress or anxiety, Plaintiff said she "can feel afib kicking in." While she does not have chest pain, she can feel "an unevenness of heart beat on a daily basis." T.34. Plaintiff's position as a reading specialist required a lot of walking during

the day; she did not have a permanent classroom and she had to go to the students. T.35. Plaintiff stated that her diabetes was under control, "so to speak," but she did report frequent diarrhea and urinary problems, which were caused by a combination of colon symptoms, gall bladder symptoms, and side effects from her heart medication. T.39-40. Plaintiff indicated that there were days when she was going to the bathroom 5 to 8 times in the morning. T.40. Plaintiff also had glaucoma, which caused blurred vision; she could read big signs, but she could not read street signs until she was "right up on them." T.40. Plaintiff testified that she could walk a block before she felt a little winded, and began having heart palpitations. T.43. She could cook for herself, but had been forced to modify how she did certain activities such as laundry. T.45. She had friends who helped her keep her house maintained, and who also helped her look after her dog. T.45. She estimated she could carry 1, but not 2, gallons of milk, and that she could stand for 10 to 15 minutes before she started experiencing pain. T.46, 50.

The ALJ analyzed Plaintiff's credibility as follows:

> [Her] specific allegations are not credible when compared with the record. For example, although the claimant testified that her medications cause side effects, she did not mention this to her treating physician. Moreover, the claimant's activities of daily living are not consistent with total disability. As noted above, the claimant testified that she lives alone and does her own cooking and laundry; visits her elderly mother in Gowanda and "helps out"; visits with friends and plays cards and watches movies; reads a little and does "a lot of knitting".

T.19. The ALJ's credibility analysis was legally deficient, misrepresented the record, and was not supported by substantial evidence.

As Plaintiff argues, simply because a physician does not record a complaint of side effects in the treatment notes does not mean that such side effects are not occurring. Moreover, the record indicates that Plaintiff did report side effects of her medication to treating and examining sources. For example, on September 24, 2010, Plaintiff noted she was experiencing diarrhea, which she attributed to her Metformin. T.245. On August 5, 2011, primary care physician Dr. Bastible noted that Plaintiff had been on Pravastin but stopped because it had been bothering her. T.227. At the consultative examination with Dr. Dave, Plaintiff reported dizziness and light-headedness for the past three years, which she attributed to her medications. T.256.

Moreover, none of the activities of daily living recited by the ALJ contradict Plaintiff's subjective complaints or establish that she would be able to meet the exertional and nonexertional demands of light work on a "regular and continuing basis," i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule[,]" SSR 96-8p, 1996 WL 374184, at *2. See, e.g., Polidoro v. Apfel, No. 98 CIV.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. 1999) ("A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless

there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job.") (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983) (finding that Secretary failed to sustain burden of showing that claimant could perform sedentary work on the basis of (1) testimony that he sometimes reads, watches television, listens to the radio, rides buses and subways, and (2) ALJ's observation that claimant "'sat still for the duration of the hearing and was in no evident pain or distress'"; circuit found "[t]here was no proof that [claimant] engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job")).

Furthermore, the ALJ failed to give any credit for Plaintiff's favorable work record. The Commissioner's regulations provide that the ALJ "will consider all of the evidence presented, including information about [the claimant's] prior work record." 20 C.F.R. § 404.1529(c)(3); see also SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996) (instructing that credibility determinations should take account of "prior work record"). Importantly, the Second Circuit has observed that "a good work history may be deemed probative of credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). Here, Plaintiff had enough earnings to provide full quarters of coverage beginning in 1989, and ending when she could no longer work due to her impairments in September 2010.

Plaintiff argues that if her testimony is credited fully, it supports a finding that she can perform, at most, sedentary work. See SSR 83-10, 1983 WL 31251, at *5; 20 C.F.R. § 404.1567(a) (defining sedentary work). On the disability onset date of September 1, 2010, Plaintiff was 56 years-old, and thus has been in the "advanced age" category at all relevant times. See 20 C.F.R. § 404.1563(e) (A person aged 55 years-old or older is of "advanced age," and the Commissioner will consider that "age significantly affects a person's ability to adjust to other work."). If Plaintiff only were found to have the RFC for sedentary work, the Commissioner would bear the burden of showing that her education provides for direct entry into skilled work, or that she has transferable skills. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f) ("In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age . . . there must be very little, if any, vocational adjustment required. . . ."); ;see also 20 C.F.R. § 404.1568(d)(4) (Under the regulation, skills are transferable only if "the sedentary work is so similar to [the claimant's] previous work that [the claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."). Plaintiff, citing generally to Rules 201.00 to 201.08, asserts that because her past work as an elementary school reading teacher was performed

at the light exertional level,[8] the Medical-Vocational Guidelines would have directed a finding of disabled, unless she was shown to have transferable skills, or recently completed education. See Pl's Mem. at 14. The Court notes that under Rule 201.06, if Plaintiff's education is determined to be "high school graduate or more–does not provide for direct entry into skilled work" and her previous work is found to be "skilled or semiskilled–skills not transferable," a finding of "disabled" would be required. However, under Rule 201.07, with the same education and with previous work providing transferable skills, a contrary finding is required. In short, Plaintiff's argument cannot be accepted or rejected at this juncture, because there have been no explicit findings by the ALJ as to Plaintiff's educational level, any skills involved in her past work, and the transferability of those skills to possible jobs she can perform. See 20 C.F.R. §§ 404.1565–404.1568; Burton v. Sec'y of Health and Human Servs., 893 F.2d 821, 823 (6th Cir. 1990) ("By imposing upon claimants unable to perform their past work the requirement that they possess transferable skills, the regulations avoid unduly burdening the unskilled and the elderly, both of whom are unlikely to succeed in finding a new line of work on the job market. . . . [T]he [Commissioner]'s determination of disability includes an assessment of the skills (if any) involved in the

---

[8] Dictionary of Occupational Titles, DOT #092.227-010, Teacher, Elementary School, available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT01C.HTM) (last visited Jan. 8, 2016).

claimant's past work, and whether those skills are transferable to a significant number of existing jobs which the claimant can perform.") (internal and other citations omitted). Depending on the outcome of the ALJ's re-evaluation of Plaintiff's RFC and her credibility, such findings must be made on remand.

**VI. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. In particular, the ALJ is directed to contact Dr. Dave for clarification of the medical source statement in her consultative report; to re-assess Plaintiff's RFC and perform the required function-by-function assessment; to re-evaluate Plaintiff's credibility in accordance with the required regulatory factors and SSR 96-7p; and, if necessary, perform a step five analysis. In addition, the ALJ should endeavor to obtain a medical source statement from one of Plaintiff's treating physicians.

**SO ORDERED.**

**S/Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: January 13, 2016
Rochester, New York